IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Leroy Williams,              ) | Civil Action No. 2:14-cv-02545-RMG-MGB |
|                              ) | |
| Plaintiff,   ) | |
|                              ) | |
| v.                           ) | **REPORT AND RECOMMENDATION** |
|                              ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin,           ) | |
| Acting Commissioner of Social ) | |
| Security,                    ) | |
|                              ) | |
| Defendant.   ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Leroy Williams, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 58 years old on his amended alleged disability onset date of August 16, 2009. (R. at 11, 23.) Plaintiff claims disability due to, *inter alia*, congestive obstructive pulmonary disease (COPD); borderline intellectual functioning, cognitive disorder; and major depressive disorder with psychotic features. (*See* R. at 13.) Plaintiff has a high school education and past relevant work as a bricklayer, security guard, and maintenance man. (R. at 23, 37.)

Plaintiff filed an application for DIB on August 6, 2010. (R. at 11.) After his application was denied initially and on reconsideration, one hearing was held before an Administrative Law Judge (ALJ) on December 6, 2011, and a subsequent hearing was held on March 7, 2013. (R. at 13.) In a decision dated March 29, 2013, the ALJ found that Plaintiff was not disabled. (R. at 11-25.) The

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Appeals Council denied Plaintiff's request for review, (R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2)  The claimant has not engaged in substantial gainful activity since August 16, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)  The claimant has the following severe combination of impairments: congestive obstructive pulmonary disease (COPD), borderline intellectual functioning (BIF), cognitive disorder, and major depressive disorder with psychotic features in partial remission (20 CFR 404.1520(c)).
>
> (4)  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work[2] as defined in 20 CFR 404.1567(c) except that he must avoid concentrated exposure to temperature extremes, wetness, humidity, dust, flumes, chemicals, noxious odors and poor ventilation. The work, which he can do, is limited to occupations, which involve the performance of simple, routine, repetitive tasks, with only occasional interaction with the public and coworkers. The claimant cannot work in an environment that is overly crowded or noisy.
>
> (6)  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)  The claimant was born on December 22, 1950 and was 58 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday.

> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from August 16, 2009, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id*. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence

to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff asserts the ALJ's Step Two analysis is not supported by substantial evidence because the ALJ "barely acknowledged the evidence regarding [Plaintiff's] lower extremity edema." (Dkt. No. 15 at 8.) Plaintiff complains that the ALJ "merely stated that it had 'no more than a minimal' impact on his work-related functioning despite the fact that it was both documented and his own central reasoning for being unable to work." (*Id.*) Additionally, Plaintiff asserts the ALJ's Residual Functional Capacity ("RFC") analysis is not based on substantial evidence. (*Id.* at 9.) Plaintiff contends that the ALJ's analysis "was not based on the proper legal framework insofar as she failed to address specific functions fairly at issue" and that the RFC assessment is "without sufficient written rationale." (*Id.*) Plaintiff further complains the ALJ's credibility analysis is flawed because the ALJ "never really addressed" Plaintiff's "central complaints . . . [of] the swelling in his legs and shortness of breath on exertion." (*Id.* at 12.)

### A.   Step Two Analysis

As noted above, Plaintiff contends the ALJ's analysis at Step Two is not supported by substantial evidence because the ALJ "barely acknowledged the evidence regarding [Plaintiff's] lower extremity edema," "despite the fact that it was both documented and his own central reasoning for being unable to work." (Dkt. No. 15 at 8.) At Step Two of the sequential evaluation process, the ALJ "consider[s] the severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations define a "non-severe" impairment as "[a]n impairment or combination of impairments . . . [that] does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs," and some examples include:

5

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). In *Evans v. Heckler*, 734 F.2d 1012 (4th Cir. 1984), the Fourth Circuit stated, "An impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans*, 734 F.2d at 1014 (emphasis in original) (citations omitted).

In the case *sub judice*, the ALJ concluded that Plaintiff's edema was not a severe impairment. (*See* R. at 13-14.) The ALJ stated, *inter alia*,

> The claimant has also been diagnosed for, or given a history of tobacco abuse, obesity, diabetes mellitus, edema, and hypertension, but these have been controlled with medication and/or other conservative measures and/or have not resulted in any limitation of his ability for basic work-related activities. Therefore, the undersigned finds that these are not severe impairments.

(R. at 14.) The undersigned finds no reversible error. As the Fourth Circuit stated in *Gross v. Heckler*, 785 F.2d 1163 (4th Cir. 1986), "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross*, 785 F.2d at 1166 (citing *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530); *see also Gross*, 785 F.2d at 1165-66 (holding the Appeals Council "did not err in eliminating" the plaintiff's "visual problems, arthritis and ulcers as evidence of disability" because "[t]here was ample reason to conclude that [the plaintiff's] arthritis, poor vision and ulcers would all respond to basic medical attention, and were therefore not disabling").

6

Here, Plaintiff was prescribed Lasix on August 16, 2009 to treat his edema. (R. at 35, 354-55, 510.) Dr. Tunney saw Plaintiff the following day for a follow up visit due to foot swelling; Dr. Tunney's notes indicate that Plaintiff was doing better. (*See* R. at 356.) Plaintiff testified at the hearing that the prescription for Lasix was helping. (R. at 41.) Furthermore, as noted by the Defendant, the record contains a significant amount of evidence that Plaintiff's edema was controlled by medication. (*See* Dkt. No. 19 at 10-11; *see, e.g.*, R. at 497-98, 511, 515.) The undersigned concludes the ALJ's analysis at Step Two is supported by substantial evidence. *See, e.g., Martise v. Astrue*, 641 F.3d 909, 923-24 (8th Cir. 2011) ("[The plaintiff] argues that the ALJ erred in finding that her migraine headaches were not a severe impairment. . . . Because [the plaintiff's] migraine headaches are controllable and amenable to treatment, they do not support a finding of disability." (citation and internal quotation marks omitted)); *Harris v. Comm'r of Soc. Sec.*, No. 12-14121, 2014 WL 793612, at *9 (E.D. Mich. Feb. 27, 2014) (upholding Step Two finding of non-severity where "the record shows the [plaintiff's] treatment was routine and her conditions were either controlled with medications or asympomatic" (internal quotation marks omitted)); *Barrow v. Astrue*, Civ. A. No. 2:10CV698, 2011 WL 4500846, at *5 (E.D. Cal. Sept. 27, 2011) ("[B]ecause the medical record confirms that [the] plaintiff's foot impairments responded to medication and treatment, the ALJ could properly find that they were not severe impairments.").

## B.     RFC Analysis

Plaintiff asserts the RFC is not supported by substantial evidence, contending the ALJ erred because the ALJ "failed to address specific functions fairly at issue" and because the RFC is "without sufficient written rationale." (Dkt. No. 15 at 9.) Plaintiff further complains the ALJ's credibility analysis is flawed because the ALJ "never really addressed" Plaintiff's "central complaints . . . [of] the swelling in his legs and shortness of breath on exertion." (*Id.* at 12.)

The undersigned discerns no reversible error. In the case *sub judice*, the ALJ concluded the Plaintiff could perform a reduced range of medium work. (*See* R. at 18.) As noted in Social Security Ruling 83-10,

7

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.

SSR 83-10, 1983 WL 31251, at *6; *see also* 20 C.F.R. § 404.1567 ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

> The ALJ noted Plaintiff's testimony at the two hearings as follows:
>
> The claimant appeared and testified at the hearing on December 6, 2011. The claimant testified, through his attorney, that he was amending his alleged onset date to August 16, 2009, when he was first prescribed a diuretic to control the swelling in his ankles. He reported that he was unable to work because he is unable to stand for long and needs to take time to elevate his legs. . . .
>
> The claimant further testified that the Prozac he takes for his depression helps his depressive symptoms and keeps him calm. . . . Despite having daily "coughing fits," he indicated that he is trying to stop smoking. Perfume and fumes bother him. Although he did not report such symptoms to his treating physicians, the claimant testified that he loses control of his bladder 2-3 times each day. The claimant reported that he attends church, drives, and goes to the grocery store. . . .
>
> . . .
>
> A supplemental hearing was held on March 7, 2013. The claimant testified that he spends no more than 3 hours standing and/or walking around, and 3-3½ hours sitting each day. He "leans" for 20 minutes 3-4 times each day. The claimant indicated that he is able to lift up to 25 pounds but only 5-10 pounds if he had to do it repetitively. . . .

(R. at 18-19.) Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.* at 19.)

The ALJ found that Plaintiff's "activities of daily living are inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above." (R. at 20.) The ALJ further stated,

8

> The evidence of record indicates that despite the claimant's complaints and allegations, he has admitted that he was able to bathe, dress, and feed himself, drive, shop for groceries, make a sandwich, use the microwave, mop the floor, wash dishes, do yard work, go fishing, talk on the telephone, do puzzles, watch television for over 3 hours each day, and attend church, activities, which generally reveal functioning at a greater level than alleged (Exhibit 6E, 11E, 21F). These activities, when viewed in conjunction with the other inconsistencies, further limit the claimant's credibility. Of note, his descriptions of his daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests.

(R. at 20-21.)

The ALJ accorded the opinions of the State Agency medical consultants "significant weight inasmuch as they are generally consistent with the medical evidence of record." (R. at 21.) The ALJ noted that Dr. McCall "concluded that the claimant had **no** exertional limitations," but stated that, "accord[ing] the claimant the benefit of the doubt . . . limited him to work at the medium exertional level." (R. at 21 (emphasis added); *see also* R. at 419-23.) The ALJ's decision states that the RFC assessment "is supported by the weight of the evidence of record," as it is "generally consistent with the opinion of the State Agency at Exhibit 16F, as well as consistent with the findings of Dr. Bates and Dr. Williams." (R. at 23.) The ALJ further stated,

> The claimant's mental impairments have been managed with Prozac, when he takes it consistently. While he reports shortness of breath with exertion, he continues to smoke cigarettes against the advice of his health care providers. Notably, the avoidance of dust, flumes, chemicals, noxious odors and poor ventilation, in the above residual functional capacity assessment is purely precautionary, as the claimant continues to smoke cigarettes.

(R. at 23.)

Exhibit 16F, to which the ALJ refers, is an RFC assessment completed by Dr. Hutson. (*See* R. at 460-67.) In reaching his conclusions, Dr. Hutson acknowledged Plaintiff's "[r]ecent 7/11 exam," wherein Plaintiff's "breathing [was] slight[ly] labored." (R. at 461.) Even with that acknowledgment, Dr. Hutson concluded that Plaintiff has the RFC to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday. (R. at 461.)

In concluding the ALJ did not commit reversible error, the undersigned has reviewed *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the plaintiff argued the ALJ "erred in assessing her residual functional capacity because he did not conduct a function-by-function analysis." *Mascio*, 780 F.3d at 635-36. The court in *Mascio* noted that the plaintiff's argument "rests on Social Security Ruling 96-8p, which explains how adjudicators should assess residual functional capacity." *Mascio*, 780 F.3d at 636; *see also* SSR 96-8p, 1996 WL 374184. As noted in *Mascio*,

> The Ruling instructs that the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations. Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. The Ruling further explains that the residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).

*Mascio*, 780 F.3d at 636 (internal quotation marks and citations omitted). The Fourth Circuit found that a per se rule, requiring remand when the ALJ does not perform an explicit function-by-function analysis, "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id*. (quotation marks and citation omitted). The court stated,

> But declining to adopt a per se rule does not end our inquiry. In that regard, we agree with the Second Circuit that "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."

*Id*.; quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The court in *Mascio* concluded remand was warranted because while the ALJ "determined what functions he believes [the plaintiff] can perform, . . . his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions." *Mascio*, 780 F.3d at 637. The Fourth Circuit pointed to conflicting evidence–that the ALJ did not address–in concluding a remand was necessary. *Id*.

The instant action is easily distinguishable from *Mascio*. Unlike the decision at issue in *Mascio*, the opinion in the case *sub judice* is not "sorely lacking in the analysis needed for [the court] to review meaningfully [the ALJ's] conclusions." *Mascio*, 780 F.3d at 637. The ALJ credited the opinions of the State Agency consultants and explained her rationale. The RFC found by the ALJ is, as the ALJ noted, consistent with the opinion of Dr. Hutson. (*See* R. at 23.) The undersigned concludes the RFC assessment is supported by substantial evidence. *See Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) ("Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance."); *see also Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the ALJ).'" (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987))).

Plaintiff's last argument is that the ALJ erred in assessing Plaintiff's credibility because the ALJ "never really addressed" Plaintiff's "central complaints . . . [of] the swelling in his legs and shortness of breath on exertion." (Dkt. No. 15 at 12.) As discussed above, the ALJ did not err in concluding that the swelling in Plaintiff's legs was not a severe impairment. And as to Plaintiff's complaint that the ALJ failed to address his alleged shortness of breath, the ALJ stated, "While [Plaintiff] reports shortness of breath with exertion, he continues to smoke cigarettes against the advice of his health care providers." (R. at 23.) Such conclusion was not erroneous. *See, e.g., Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (ALJ could consider social security disability claimant's failure to stop smoking in making credibility determination, where claimant complained of shortness of breath, but he continued to smoke pack of cigarettes a day, medical records reflected that smoking likely caused his chronic obstructive pulmonary disease (COPD), and there was no dispute that smoking had direct impact on his pulmonary impairments). The undersigned therefore recommends affirming the Commissioner's decision. The Commissioner's decision should therefore be affirmed.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 21, 2016
Charleston, South Carolina